## LAND v. DUNN. (No. 6382.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 23, 1920. Rehearing Denied Jan. 5, 1921.)

1. **Boundaries ⬅➡36(1)—Tax receipt recorded without authorization of statutes not admissible.**

There being no law authorizing tax receipts to be recorded prior to 8 Gammel's Laws, p. 1095, passed in 1876, followed by Laws 1915, c. 85 (Vernon's Ann. Civ. St. Supp. 1918, arts. 7617a–7617d), the filing for record of a tax receipt in 1849 was unauthorized, so that the receipt was not admissible in evidence to show the boundaries of land.

2. **Boundaries ⬅➡36(1)—Tax receipt not admissible to show boundaries of land.**

Neither an original tax receipt nor the recorded copy is admissible to determine the boundaries to land, since it was not the tax collector's duty to determine boundaries.

3. **Boundaries ⬅➡37(3)—Recital of deed that lines of grants were coincident not sufficient to show general reputation.**

The recitals of a deed could be admissible, in an action of trespass to try title, only on the theory that a grantor is presumed to know the boundaries of his own land, but it cannot be presumed that he knew whether the land owned by another extended to his east line, where grantor's survey was located 25 years before grantees, and grantor's recital that the lines of two grants were coincident would not establish a general reputation to that effect.

4. **Boundaries ⬅➡37(1)—Deed not stating section conveyed held insufficient to show boundaries.**

In action of trespass to try title, a deed which fails to describe what section is conveyed is insufficient to show boundaries.

5. **Boundaries ⬅➡36(3)—Only that part of letter certifying duly filed map admissible.**

In trespass to try title involving boundary, where a map was properly filed in the General Land Office, a copy thereof was admissible in evidence; and, it being contemplated that field notes of all surveys shall be made and recorded, a map should be made from such field notes, which should fully explain it, so that a letter, although accompanying the map and filed, was not admissible, except that part certifying to the map's correctness, in the absence of a law authorizing its filing.

6. **Evidence ⬅➡505—Surveyor's conclusion as to monument marking corner held inadmissible.**

A district surveyor's mere conclusions, contained in his report or letter that a monument marked a certain corner, was inadmissible on question of boundaries in trespass to try title.

7. **Evidence ⬅➡318(2)—Surveyor's letter as to another's statements not admissible.**

A statement in a surveyor's letter or report as to statements made by another, claiming to have assisted in the first survey as to boundary lines, is inadmissible in trespass to try title, being the unsworn conclusions concerning another person's statement, and not affording opportunity for cross-examination to ascertain what such statements were.

8. **Boundaries ⬅➡36(3)—Map not filed, not an archive and admissible as such.**

A map, not filed in the surveyor's office or the General Land Office, does not become an archive in either office, and is not admissible to determine boundaries in trespass to try title.

9. **Appeal and error ⬅➡1051(1)—Erroneous admission of map was harmless, where official map was introduced.**

In an action of trespass to try title, error in admitting a map which was no more than the conclusions of a deceased person as to the location of lines was harmless, where an official map made by the same person which was identical with reference to the location of the line in controversy was admitted in evidence.

10. **Appeal and error ⬅➡1050(1)—Permitting surveyor to point out on map where lines would run held not error.**

Assignments of error in permitting a surveyor to point out on a map where the lines covered by deeds would be according to the descriptions become immaterial, where the deeds were held not admissible.

11. **Trial ⬅➡90—Motion to strike answer of witness, shown incompetent on cross-examination, necessary.**

Where a witness claimed to know a fact, and his answer showed that he did not, objection to the answer presents no error, where no motion to strike was made.

12. **Boundaries ⬅➡33—Acquiescence in claim as to boundary held to raise no presumption of correctness of claim.**

Owners of a tract of land not being interested in a claim that the west boundary line of another tract extended to their east line, their acquiescence in such claim cannot raise any presumption that it extended that far west.

13. **Boundaries ⬅➡35(1)—Evidence of popular name applied to grants admissible in fixing boundary.**

In trespass to try title, evidence that two grants were called the B. grants was admissible, the circumstances tending to show that the original surveyor calling for the B. pasture lands probably intended to call for the grants instead of a larger body of land similarly designated.

14. **Trial ⬅➡194(1), 248—Refusal of charges which are abstract or on weight of evidence not error.**

It is not error to refuse requested charges which are clearly on the weight of the evidence, or are abstract and would confuse rather than assist the jury.

15. **Boundaries ⬅➡33—Burden of proof as to lines of land held on plaintiff.**

In an action of trespass to try title, the burden is on plaintiff to prove the land in controversy belongs to him, which includes the burden with respect to locating the lines of land in controversy.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Charles Land against John Dunn. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

G. R. Scott and Boone & Pope, all of Corpus Christi, for appellant.

Geo. C. Westervelt and J. C. Scott, both of Corpus Christi, for appellee.

MOURSUND, J.  Charles Land sued John Dunn in trespass to try title to recover 184.29 acres of land described by metes and bounds and as a part of survey 404, made by virtue of Beaty, Seale & Forwood certificate No. 1740, the petition thus disclosing that the land is claimed by Land under a state location and survey.  Dunn answered by plea of not guilty.  The evidence discloses that Dunn claims under a Mexican grant made by the state of Tamaulipas to Enrique Villareal, the grant being known as. the Rincon del Oso.  The only issue involved is whether the land sued for is in said Rincon del Oso grant; it being contended by plaintiff that it lies west of the west line of said grant, and the defendant contending that it lies within the boundaries of said grant.  This is the second appeal; the opinion of this court upon the first being reported in 193 S. W. 698.  Upon this trial the cause was submitted upon two special issues, as follows:

"(1) Did the Rincon del Oso grant, as surveyed by Antonio Canales, the original surveyor, extend to and have for its western boundary line the east boundary line of the Gregorio Farias grant?

"(2) What is the fair and reasonable annual rental value per acre of the land in controversy?"

The first issue was answered, "Yes." The second was not answered, there being no occasion therefor, as the first issue was answered adverse to plaintiff. Judgment was entered for defendant.

Appellant presents a number of assignments of error relating to the sufficiency of the evidence, it having been contended both before the case was submitted to the jury and on motion for new trial that the evidence as a matter of law fixed the west boundary line of the Rincon del Oso grant east of the land in controversy, and having also been contended in the alternative in the motion for new trial that the great weight and preponderance of the evidence sustained such a conclusion. The two issues thus presented have been properly presented for review. We have considered the evidence, and conclude that the same presents an issue to be determined by the jury, and that therefore no error was committed in submitting special issue No. 1, and that the answer of the jury thereto is supported by the evidence. We, therefore, overrule all assignments in any way questioning the sufficiency of the evidence to support the judgment.

[1] Under an agreement to use the records instead of copies, the appellee offered in evidence a certified copy of a tax receipt, with map attached, acknowledged by the tax collector November 6, 1849, and filed for record the same day.  This instrument recites that on November 2, 1849, there had been received from H. L. Kinney $53.33 in payment for state and county taxes for the years 1846 to 1849, inclusive, on a certain tract of land contained in the "survey hereto attached and made part of this receipt for description."  The land is described in the receipt as follows:

" 'Ten leagues' of land more or less situated in this county, and on the west side of the Corpus Christi and Nueces Bays as per the county record of this county, being known as the Villareal tract of land, also the 'Rincon del Oso' and the western boundary if formed by running a line from the First ford up the River Nueces (eighteen miles above the town of Corpus Christi) due south three hundred and fifty cordeles to a mogonera, which forms the southwest corner, and incloses the Villareal tract, which is bounded on the other three sides by the Nueces river, Corpus Christi Bay and Callo del Oso.  This the tract takes the name of 'El Rincon del Oso' and the same assessed upon the assessment roll of this county as the property of H. L. Kinney, being the same he purchased of Enrique Villareal as per record."

The map delineates a body of land surrounded by the Nueces river and the Nueces Bay on the north, the Nueces Bay, Corpus Christi Bay and a stream unnamed on the east and a continuation of that stream on the south and then a continuation of that stream in a northwestwardly direction on the south and a continuation of that same stream in almost a due west course on the south to a point marked Mogonero, beneath which is a point designated south, and then a point running northwesterly to an intersection with the Nueces river, which is marked north and the first ford up the Nueces river, the towns of Nuecestown, Corpus Christi and several ranches, and what is supposed to represent a large clump of trees are all within these lines.

The record of these instruments was admitted in evidence over the following objections:

"That the record offered was not a record of an instrument either authorized or required by law to be recorded; that it was a self-serving declaration, filed by H. L. Kinney in November, 1849, and did not purport to be a conveyance affecting the title to the land at all, but only a receipt from the tax collector to H. L. Kinney for certain taxes; that it contained statements, made by the tax collector with reference to the boundaries of the Villareal grant, which are hearsay and self-serving on behalf of H. L. Kinney, who filed the receipt and that said statement and declarations were

purely hearsay declarations, and statements made by J. Benton Johnson, tax collector of Nueces county, and that such testimony was wholly inadmissible for any purpose whatever, and the same objection was made to the map attached to and made part of the tax receipt and on the further ground that it was an unidentified map."

This receipt was procured by Kinney about two years after Snively had made a map showing the Villareal grant to have more than twice as much land as called for. The receipt does not indicate whether he paid taxes on 10 leagues or the true acreage, but it indicates his purpose to show the extent of his claim.

[2] We find no provision in Hartley's digest, which purports to embrace all laws in force in 1850, expressly providing for the recording of tax receipts, nor any statute relating to registration, which might be construed to embrace the same. In 1876 (Gammel's Laws, vol. 8, 1095; Laws 1876, p. 259), it was provided that such receipts could be recorded, and in 1915 (Reg. Sess. c. 85 [Vernon's Ann. Civ. St. Supp. 1918, arts. 7617a–7617d]) further provision was made on this subject. We do not believe the tax receipt was such an instrument as was authorized to be recorded at the time it was recorded, and therefore conclude that the record thereof was not admissible. Aside from this, however, we conclude that the original receipt, if procurable, could only have been admitted for the purpose of showing the payment of taxes on the Villareal grant, and such proof is not material to any inquiry in this case. The declarations of the tax collector concerning the boundaries of the survey are not admissible, nor a map adopted by him as delineating such boundaries. It was not a part of his duties to investigate and determine boundaries, and his statements are not admissible on any theory. The recording of an instrument, even if authorized, cannot make every recital in the instrument admissible in evidence for the purpose of showing the existence of the facts thus recited. The fourth assignment is sustained.

[3] The appellant introduced in evidence two deeds, one dated August 13, 1851, recorded the next day, from Jesus Ramirez to Henry L. Kinney, and the other dated June 12, 1852, and recorded August 24, 1852, from said Ramirez, by his attorney, J. H. Durst, to said Kinney. The first deed contained the following description:

"Four leagues and three caballerias of lands, lying in said county of Nueces and fronting on the Nueces river being part of a tract of land of twenty leagues purchased by said Pedro Ignacio Garcia on the 1st day of August, 1811, from Vicente Lopez de Herrera, which said lands were granted in 1806 by the Spanish government to the said Vicente Lopez de Herrera and his sons, and is now bounded on the lower line of the said Nueces river by the lands of said Kinney purchased from Enrique Villareal, and known as the Rincon del Oso; the four leagues and three caballerias bargained and sold as aforesaid to the said Kinney are to be laid and taken off from the said tract of twenty leagues purchased by said Pedro Ignacio Garcia from said Herrera on the lower line of the same fronting on said river in proportion to the residue of said lands and to run back on the line of the said Kinney to the back line of the survey of said twenty leagues so that the said four leagues and three caballerias shall not have more than their due front on said river."

The second deed, in describing the land conveyed, contains the following recital:

"And is now bounded on the lower line of the said Nueces river by the lands of said Kinney purchased from Enrique Villareal and known as the Rincon del Oso; the four leagues and three caballerias bargained and sold as aforesaid to the said Kinney are to be taken off from the said tract of twenty leagues purchased by said Pedro Ignacio Garcia from said Herrera on the lower line of the same fronting on said river in proportion to the residue of said lands and to run back on the line of the said Kinney to the back line of the survey of said twenty leagues, so that the said four leagues and three caballerias shall not have more than their due front on said river."

Each of these was admitted over the following objections:

"That it was not to any part of the land in controversy, was wholly immaterial and incompetent evidence, and specially objected to the recitals therein and above set out on the ground that the grantee, H. L. Kinney, was at that time asserting a claim to the entire Rincon del Oso grant, and this claim was then in controversy, as shown by the record in evidence, and the declaration in the instrument as to boundaries of the land sought to be conveyed are declarations, not against interest, but declarations in interest, hearsay, self-serving, and conclusions on the part of the grantor in the deed, and self-serving declarations in favor of the grantee, and showing an assertion of the boundary inconsistent with the instruments under which the grantee deraigns title to the Rincon del Oso lands, and that such recitals were not admissible on the issue of boundary."

We conclude that these deeds were not admissible. The recitals of Ramirez could be admissible only on one theory, and that is that a grantor is presumed to know the boundaries of his land. If the location of the east line of the Farias survey is material, and disputed, any recital of Ramirez in a conveyance of part thereof concerning the location of said line would be admissible for the purpose of showing the location of such lines, but we fail to see how it could be presumed that he had any knowledge whether the land owned by the grantee extended to grantor's east line, it being undisputed that the grantor's survey was located 25 years before the grantee's survey. In submitting the issues to

the jury, it is assumed that the location of the Farias east line is shown beyond dispute, and the only inquiry deemed material by the court was whether the Rincon del Oso grant was actually surveyed on the ground so as to embrace all land up to the east line of the Farias survey, it being disputed whether the calls of the surveyor were intended to refer to corners of the Farias grant. While it is presumed that Ramirez, who became the owner of the Farias grant, knew the location of his east line, it cannot be presumed that he knew what lines were run by the surveyor who located the Rincon del Oso grant. His declarations were offered as a circumstance tending to show that the Rincon del Oso west line was generally reputed to be the same as the Farias east line. It can have no more probative force than the declaration of any other person residing in that vicinity, expressing his opinion that said lines coincide. If Ramirez had been placed on the witness stand, he might have testified to general reputation concerning the matter, but would not have been permitted to state his conclusion that the Rincon del Oso grant extended to his eastern boundary line. Ramirez may have made the recitals because of belief founded upon general reputation, but the fact that he believed the lines coincident could not establish that there did exist general reputation at the time upon the point.

[4] A deed from Wheelan to John Dunn, the father of appellee, and under whom appellee claims, dated July 8, 1882, and recorded July 10, 1882, was admitted in evidence, conveying 640 acres of land out of the Enrique Villareal grant, and referring to a map of Kinney's sectionized lands. In objecting to this instrument, reference is made to an admission of the parties, but we are not apprised of what the admission was. Irrespective of other objections urged, the deed fails to describe what section is conveyed, and is insufficient for that reason. Its recitals would not be admissible for the purpose of proving general reputation. We sustain the seventh assignment.

[5] The court permitted appellee to introduce in evidence a certified copy of a map filed in the General Land Office, December 27, 1847, by Jacob Snively, surveyor of the district of San Patricio and Nueces, and a certified copy of a letter or report, from said Snively to the Commissioner of the General Land Office, accompanying and referring to said map. The letter contains references to several surveys, among them the Villareal grant, concerning which the following language is used:

"I have run the upper line of the Villareal grant (now the property of Col. Kinney). The survey is so much larger than what the field notes call for, that I could scarcely believe that I was right, until the Mexican who assisted in making the first survey pointed out the directions of the corner, and described the same so minutely that I could no longer doubt. The corner is made of cement, which will stand for ages to come."

An examination of the laws relating to surveys and maps as contained in Hartley's Digest convinces us that the map was properly filed in the General Land Office, and that a copy thereof was admissible in evidence. In fact appellant seems to concede this by confining his propositions to the letter as a whole and to certain portions of the letter. We find no provision in Hartley's Digest from which we can deduce any authority to the surveyor to make explanations of his map by letter or report. It seems to be contemplated that field notes of all surveys shall be made and recorded, and there being no provision for a report by the surveyor in connection with maps, it seems that the map should be made from the field notes on file, and that these should be sufficient to explain the map. We conclude that the letter, although accompanying the map, was not admissible in evidence, with the exception of that part certifying to the correctness of the map. The fact that the letter was filed in the Land Office would not make it admissible in the absence of a law authorizing such a letter or report to be made and filed in such office. Keystone Mills v. Lumber Co., 96 S. W. 64; Barrow v. Gridley, 25 Tex. Civ. App. 13, 59 S. W. 602, 913; Magee v. Paul, 159 S. W. 325; Rogers v. Pettus, 80 Tex. 425, 15 S. W. 1093; Daniels v. Fitzhugh, 13 Tex. Civ. App. 300, 35 S. W. 38. However, as some further light may be thrown on this question by counsel, we deem it appropriate to consider the objections urged to certain portions of the letter. In order to consider the nature and effect of the statements objected to, we deem it advisable to describe the map and the objects called for in the grants for identification of corners.

[6] This map apparently was intended by Snively to represent two theories concerning the location of the south and west lines of the Rincon del Oso grant. The north line of the Corpus Christi grant is extended west to a point considerably northeast of the point indicated for the southeast corner of the Farias tract. Then a line is run on a true north course, crossing the east line of the Farias, which Farias line was run upon a variation of about 10 degrees, to a point on the Nueces west of the northeast corner of the Farias tract, as indicated on the map. The other line, apparently presented for a part of the southern boundary, begins on the Oso creek a considerable distance north and west of the point of beginning of the first described line. It runs west to a point in the west line of the Farias grant some distance from the southwest corner of said grant. From this point a line is drawn running diagonally across the Herrera survey to its northwest corner. No explanation is made by Snively

concerning these lines, and the blueprint in the statement of facts contains nothing from which it can be determined which line Snively considered the west line of the Rincon del Oso grant. There is another copy of the map accompanying the record on which a blue line has been drawn along the south and west lines last above described, and the witness Blucher, although not consistent in his statements, finally testified that such blue line represented the lines of the survey as depicted by Snively. The map does not contain anything indicating the location of the cement monument referred to in the letter, and the letter itself fails to disclose the location of such monument, but the natural inference is that Snively accepted it, wherever it may have been located, as marking one of the corners described in the Rincon del Oso grant. In that grant it is stated that there is granted "ten sitios of pasture land embraced within the corner monuments and demarcations shown on the annexed map." The southwest corner is designated as the "one on the prairie," and the northwest corner as the "Refugio." In the Farias grant its southeast corner is designated as the boundary monument of Nuestra Senora del Refugio, and near its northeast corner on the east line was a boundary monument designated as that of San Antonio. , The latter monument is described in the grant as a cross painted on a cluster of "Anacuas" and hackberries. In surveying the grant the judge in charge ordered the surveying party to set a stone monument at the point designated Nuestra Senora del Refugio, but the further proceedings do not disclose whether this was done. Medrano made his map and report on May 22, 1805, and in August, 1806, Farias was formally invested with possession of his grant. In the instrument evidencing such investiture a boundary monument known as San Pablo is referred to, apparently on his west line, and Farias was ordered by the judge to set his fixed boundaries or monuments." It appears, therefore, that it is a matter of conjecture at what point the cement monument referred to by Snively was located, and what significance it had. His report or letter does not state the facts so that the jury could weigh them, but contains his conclusion that said cement monument marks a corner, and as he is speaking of the Rincon del Oso grant, the inference follows that he concluded it marked a corner of that grant. Such conclusion was clearly inadmissible. Denton v. English, 171 S. W. 248; Thacker v. Wilson, 122 S. W. 938; Chamberlayne on Evidence, § 2797.

[7] We also conclude that what he said about the statements made by a Mexican, who claimed to have assisted in making, the first survey, is inadmissible. To permit such statement to be read in evidence is to accept one person's unsworn conclusions concerning the effect of another person's statements, not even affording an opportunity by cross-examination to ascertain what the statements were. The statement that he had run the upper line of the Villareal grant, taken in connection with the map, is a statement to the effect that one of the lines was intended by him to mark a line which he concluded was the upper line of the Villareal tract. Such statement is a conclusion and not admissible.

We sustain the eighth assignment of error.

[8] We see no ground for admitting in evidence the map made by Felix A. Blucher on June 12, 1859. It was not filed in the surveyor's office or the General Land Office, and did not become an archive in either office.

[9] When considered as a statement by a deceased person, it is evident that it is no more than the opinion of such person concerning the location of lines, and the facts on which the opinion is based are not disclosed. The error in admitting this map was harmless, in view of the admission of an official map made by the same person a few months later, which was identical with reference to the location of the line in controversy.

[10] The tenth and eleventh assignments complain of permitting a surveyor to point out on the map where the lines of the land conveyed in the Ramirez deeds, hereinbefore referred to, would be according to the descriptions in said deeds. There can be no objection to this if the deeds are admissible in evidence. The deeds having been held inadmissible, the questions presented by these assignments become immaterial.

[11] The court did not err in permitting the witness Allen to answer the question whether he knew "from what that territory took the name of Barranco Blanco." He claimed to know, and however improbable that he could know who first called it that and why, the court was authorized to permit him to answer the question. It developed on cross-examination that he had no actual knowledge, and based his answer on the fact that he had heard it called that all his life. A motion to strike out his answer to the question objected to should then have been made. The assignment presents no error, but, if it did, it would be a harmless one, in view of his testimony as a whole.

[12] We sustain assignments 13, 14, 15, and 16. The answers of the witness did not tend to show general reputation. The east line of the Farias survey being well established, the acquiescence of owners thereof in the claim by the owners of the Villareal tract that it extended to the east line of the Farias could not raise any presumption that such was the case, rather than that said Villareal grant had its west line several miles further east. It was a matter of no interest to the owners of the Farias grant, and it is not claimed that any one under whom appellant claims

ever acquiesced in said Farias line as the west line of the Rincon del Oso grant.

[13] We believe that general reputation that the Herrera and Farias grants were also called the Barranca Blanco grants was admissible, for it would be a circumstance tending to show that Canales in calling for the Barranco Blanco pasture lands probably intended to call for the grants instead of making a general call for a larger body of land known as the Barranco Blanco lands, by reason of being in the general vicinity of certain white bluffs. We do not believe the fact that some persons called the grant by that name would be admissible. It is also clear that the witness' understanding concerning the location of the Villareal tract is not admissible.

[14, 15] We find no merit in any of the remaining assignments of error. These will not be discussed in detail. Some of the requested charges are clearly on the weight of the evidence, others are abstract, and would not assist the jury, but might be confusing. It appears to be assumed by all parties that if the jury finds that Canales did not embrace in the Rincon del Oso all land up to the Farias survey, the west line of the Rincon del Oso would be approximately where located by Dix; that is, the survey would then have to be constructed with reference to quantity. If this be conceded, there could be no purpose in having the jury locate the line in the event they found against the theory that the Rincon del Oso extended to the Farias grant. Of course the burden is upon plaintiff to prove that the land in controversy belongs to him, which includes the burden with respect to locating the west line of the Rincon del Oso east of the land in controversy, but if it be conceded that it would be thus located unless the grant extends to the Farias survey, there would be no use to submit an issue to the jury to be answered in the event they found against the defendant with respect to the Farias line.

The judgment is reversed, and the cause remanded.