### LAND v. DUNN. (No. 6710.)*

(Court of Civil Appeals of Texas. San Antonio. April 5, 1922. Rehearing Denied April 26, 1922.)

1. **Boundaries** ⚙➡7—**In absence of definite and ascertainable calls, corner beyond natural object named must be located on such object.**

In determining a boundary line, in the absence of definite and ascertainable calls for a corner beyond a natural object named, it must be located on such object.

2. **Boundaries** ⚙➡3(1)—**Reference in Mexican grant and field notes to boundary as certain pasture lands held not to outrank specific calls for natural objects, distances, and quantity.**

A reference in a Mexican land grant and field notes of a survey to the "Barranco Blanco pasture lands" as the west boundary affords no basis for a call that would outrank specific calls for natural objects, distances, and quantity, and thus enable grantee to enlarge his grant on the assumption that such pasture lands were identical with another Mexican grant where such a name was unknown to the records, and never subject to title, though nearby Mexican grants including the same were known locally as "Barranco Blanco" lands or grants, and is only to be explained by the fact that on a river north thereof, but west of such grant, there are certain white bluffs, which in Spanish means "barranco blanco," and a nearby ranch is known by the same name.

3. **Boundaries** ⚙➡3(1)—**Calls for corner as "on the prairie" or at "the Refugio" on a river held too uncertain to obviate resort to stream and distances and quantity called for.**

A call for corner of a Mexican grant as "on the prairie" or at "the Refugio" on a certain river, with no guide or explanation to determine the definite location intended, *held* too uncertain to obviate resort to the stream and distances and quantity called for.

---

⚙➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction June 7, 1922.

**4. Boundaries ⬤⟳7—That line of Mexican grant run as contended for intercepts at corner creek tributary of river only referred to therein held immaterial.**

Where a stream from its mouth to a point beyond the influence of salt water is known as the "Cayo del Oso," and from there to its source as the "Oso creek," and a Mexican grant, map, and field notes only refer to the stream as the "Cayo del Oso," it is not material that a disputed west line thereof, run as contended for, intercepts the creek at a point where it is claimed the southwest corner is located; it not being probable without evidence thereof that at the time of the grant in 1831 such distinction had developed or had occurred to the Mexican authorities, or that they contemplated the stream would acquire the additional designation.

**5. Boundaries ⬤⟳3(5)—Calls for distances held to control where ends of line on stream are not marked.**

Where ends of boundary line each rest on a river, but the points of intersection are not marked by natural or artificial objects, or by calls for established and existing older surveys, distances called for control.

**6. Boundaries ⬤⟳3(5)—Call for distance prevails over call for quantity unless unconscionable result produced.**

A call for distance prevails over a call for quantity unless an unconscionable result is produced.

**7. Appeal and error ⬤⟳1175(1)—Where no jury question is left by the decisions, court should not remand, but render judgment conforming to opinion.**

In a suit involving the boundary line of a grant, where the Court of Appeals has so construed the rules for location of corners and lines as to leave nothing to be determined by the jury in aid thereof, or that could be altered by a jury, the case need not be remanded, and judgment will be entered conforming to the opinion.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Charles Land against John Dunn. Decree in favor of defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Boone, Pope & Savage, of Corpus Christi, for appellant.

G. C. Westervelt and J. C. Scott, both of Corpus Christi, for appellee.

SMITH, J. On November 16, 1831, the estate of Tamaulipas, Republic of Mexico, granted to Enrique Villareal 10 leagues of land in what is now Nueces county, Tex. The grant was designated as the "Rincon del Oso." It was surveyed at the time by Antonio Canales, surveyor general of the state of Tamaulipas, who made a map of the grant, of which a copy, attached to the grant, is on file among the archives in the general land office of Texas. This suit concerns the western boundary of the Rincon del Oso grant. The true location of that western boundary has been the subject of much litigation, covering a period of nearly half a century. The first reported case touching the controversy is that of Schaeffer v. Berry, 62 Tex. 705. Other and later cases are, Birdseye v. Rogers (Tex. Civ. App.) 52 S. W. 986; Birdseye v. Shaeffer (Tex. Civ. App.) 57 S. W. 989; Dunn v. Land (Tex. Civ. App.) 193 S. W. 698; Land v. Dunn (Tex. Civ. App.) 226 S. W. 801. The two cases last cited are identical with the case now before us, it being the third time it has reached this court. As will be seen, Land recovered in the first trial, and Dunn in the second and third trials. The case is one essentially of boundary, and nothing else.,

The tract directly involved in this suit consists of 184.29 acres out of survey 404, certificate 1740, public free school land, situated in Nueces county. The tract was surveyed and located under a land certificate issued out of the general land office on June 25, 1879. In 1899 Charles Land, appellant herein, made application to the state to purchase the survey, which was awarded to him. Subsequently, and after he had paid for it, the land was patented to him by the state. In 1901 Land brought this suit, in the form of an action in trespass to try title, against the appellee, John Dunn, who claims under a conveyance from an assignee of Enrique Villareal, the original grantee. If the tract involved is embraced within the Rincon del Oso grant, the title is in Dunn; if it is not, then the title is in Land.

The English translation of the Rincon del Oso grant is as follows:

"I, Citizen Francisco Vital Fernandez, constitutional Governor of the free and sovereign state of Tamaulipas:

"Whereas, the captain citizen, Enrique Villareal, a resident of the town of Matamoras, designated ten sitios of pasture land for large stock in the locality called 'El Rincon del Oso.' on the coast of Nueces, jurisdiction over which has not yet been given to any of the frontier towns, and the necessary judicial measures having been taken according to the provisions of the colonization laws, as is evidenced by the proceedings formed to that effect and deposited in the archives of this government, payment having been effected in the treasury of the state of the $420 in which they were appraised, I have determined to adjudicate and concede unto said Captain Citizen, Enrique Villareal, the said ten sitios of pasture land embraced within the corner monuments and demarcations shown upon the annexed map, stamped with the seal of this government, and paragraphed for me by the secretary, which, for greater elucidation, are denominated in this present title in the following manner:

"The Refugio and the one on the prairie, from north to south, on the west;

---

⬤⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"The one on the prairie and the·one on the Cayo, from west to east, on the southern side;

"The one on the Cayo and the one on the Crossing, from south to north, on the east; and,

"The one on the Crossing and the one on the Refugio, on the northern side.

"It is bounded on the west by the Barranco Blanco pasture land; on the south by the Cayo del Oso, forming division from the Corpus Christi lands, and on the other sides by the lagoons and the Nueces river.

"By virtue whereof I confer upon the party interested full ownership and possession of the same, unto him, his children and assigns; and I order all the authorities and inhabitants of the state to have, hold and acknowledge the said citizen Villareal as the lawful lord and master of said ten sitios for large stock, which are granted to him; and to this effect, the alcalde of the town of Camargo will put the party interested in lawful possession of the same, with previous citation of adjoining owners, annotating it at the foot of this title for due perpetuation, and preserving in the archives in his charge a certified copy of the proceedings of possession carried out by him.

"Given at the city of Victoria, capitol of the state of Tamaulipas, on the 16th day of the month of November, 1831, the eighth year of the installation of the Congress of this state.
"Francisco Vital Fernandez.
"Jose Guadalupe Samano, Secretary."

The Canales map, attached to the grant, was as follows:

The field notes of the survey accompanying the grant and map, together with the attached certificates, were as follows:

"Note.—This tract of land, as is shown on the map, has an irregular shape because the La-

guna Madre and the Cayo del Oso contract it on all sides except the west. But it may be reduced to two figures of known value in geometry, such as the triangle o b g, and the rectangle a d g o. The area comprehended in both is 225,000,000 square varas, which, being added to that of the small pastures, h i, compose 250,000,000 square varas, or ten sitios of pasture land for large stock, which were demarcated within the following boundaries.

"a. Boundary on the prairie.

"b. The one of the Refugio, which is also the division from the Barranco Blanco lands.

"g. Boundary on the crossing.

"d. The one on the Cayo del Oso.

"h. Potrero de San Jos (e).

"l (i). Potréro de San Enrique.

"b c. The Nueces river.

"n. Laguna de los Caidos.

"l. Another lagoon of salt water.

"m d. Cayo del Oso, which remained as a division on the south side between this pasture land and that of Corpus Christi.

"The line or side b g, opposite the right angle at o, is 471 cord lengths and three varas, the square root of the squares of the sides o b and o g, because the square of the hypothenuse is equal to the sum of the squares of the two sides.

"The survey was made with the greatest possible exactitude and accuracy, remeasuring the cord at every half league, and correcting the ten degrees of variation N. E. affecting the compass in this country.

"All of which for due authority I certify and sign hereto, at Camargo, on the 2d of August, 1831.      Antonio Canales, Surveyor.

"Compared with and conformable to the original. City of Victoria, the 25th of October, 1831, the eighth year of the installation of the Congress.      Antonio Canales, Surveyor.

"This is attached to the title, as is ordered by his excellency, the Governor, and for perpetuation it is annotated.
"Samano, Secretary."

From the point "a" on the Canales map, marking the southwest corner of the Rincon del Oso grant as shown on that map, the Cayo del Oso extends in a northwesterly direction, diminishing, from an arm of the sea at its entrance into the Laguna Madre, to a dry arroyo, and finally merging into the normal topography of the country several miles northwest of the corner "a." The actual location on the ground of this corner "a" is the crux of this whole controversy. Appellant contends that the south boundary line of the grant does not cross, but terminates at, the Cayo del Oso, and that the southwest corner is located on the Cayo del Oso, at the point "a" indicated on the map. Appellees contends, on the other hand, in accordance with a survey made in 1886 by C. F. H. v. Blucher, county surveyor of Nueces county, that the south boundary line not only does cross the Cayo del Oso, but extends to a point 9 miles west thereof, to the southeast corner of the Gregorio Farias grant, as the southwest corner of this grant, and that the point "a" was intended to mark this

corner at that interior location, rather than on the Oso. The true location of this corner "a" determines the location of the western boundary line of the grant, since all parties concede that the west line must run approximately north from this corner to the Nueces river. Appellant marks the west line to lean very slightly to the northwest, while appellee marks it to lean less slightly to the northeast. The actual lay of the land, and the contentions of the respective parties as well, are at least approximately shown by the following map, drawn by John J. Dix, then county surveyor of Duval county, from a comprehensive survey made by him in 1878:

in any event, they do not, as appellee in effect contends, have the effect of destroying the positive calls coincident in the grant, map, and field notes for natural objects. These figures were used by the surveyor-draughtsman to more certainly fix the boundaries, natural objects, and quantity of the grant, and to better disclose his intentions with reference to locations of the calls in the field notes; and the fact that their imaginary outlines do not snugly fit the actual contour of the grant will not be so seriously regarded as to destroy his intentions and ignore the plain effect of the grant. From these general observations, the survey must be worked

It will be seen by comparing the Dix map with the Canales map, that Canales misconceived, and incorrectly delineated on his map, the course of the Cayo del Oso, as well as the general contour of the Rincon del Oso grant. Instead of projecting in a slightly north of west course from the Laguna Madre, as shown on Canales' map, the Cayo del Oso projects southwest a short distance whence it follows a northwest course to its source. And, instead of taking approximately the form of a right angle triangle, according to Canales' map, the Rincon del Oso grant, if contracted by the Laguna Madre and Cayo del Oso, as shown on the Canales map and described in the field notes, is more nearly a rectangle. These misconceptions of Canales, while serving to set his right angle triangle awry, do not displace his rectangle, except to swing it from a due east and west course to a southeast-northwest course. But,

out in detail. The main controversy involved here has been in actual litigation since 1876, nearly half a century, and ought to be settled as soon as it can be settled right. If, then, from the record before us, a just conclusion can be finally arrived at, we will endeavor to reach it.

[1] And, first, the south boundary line of the Rincon del Oso grant must, in our opinion, be confined to, and cannot cross, the Cayo del Oso on the west. The map drawn by Canales from an official survey made by him at the time of the grant in 1831 clearly and unmistakably fixes the southwest corner of the grant upon the Cayo del Oso, and does not extend the south line across the stream to the west. In the grant the land is described as "pasture land embraced within the corner monuments and demarcations shown on the annexed map," and as "bounded on the south by the Cayo del Oso." It is

also expressly recited in the surveyor's field notes attached to the map that "this tract, as shown in the map, has an irregular shape because the Leguna Madre and the Cayo del Oso contract it on all sides except the west." The intention expressed in the several ways mentioned to locate the southwest corner of the grant on the Cayo del Oso, and to restrict the course of the south boundary line to that stream, is further confirmed by the imaginary right angle triangle combined with the rectangle so clearly traced by Canales on the official map, in aid and explanation of the field notes, and the southwest corner of this figure rests upon the Cayo del Oso. If the south line, as contended by appellee, was intended to cross and extend 9 miles west of the Cayo del Oso, then such crossing would be about the center, even a little east of the center, of the south boundary line of the grant (as shown by the Dix map above). Such extension would serve to enlarge the grant from one of 10 leagues to one of 26 leagues; it would be in direct conflict with and in disregard of the location on the original map, as well as the calls for the natural object in the field notes; for, instead of ending the south line and locating the corner on the Cayo del Oso, as shown on the map, it would extend the line across, and locate the corner at an unmarked point 9 miles west of, the Cayo del Oso. Again, if the line was so extended, the recitation in the grant that it was "bounded on the south by the Cayo del Oso" must be disregarded, since in such case that natural object would constitute less than half the south boundary. And again, if the south line was so extended, the grant would not be "contracted" by the Laguna Madre and Cayo del Oso "on all sides except the west," as expressly recited in the field notes, but would be so contracted only on the north, east, and less than half of the south, thus creating a 9-mile hiatus in the south line. We think that, in the absence of definite and ascertainable calls for a corner beyond the Cayo del Oso on the west, the southwest corner must be located on that natural object. This may be said to be the construction of the grant in the Schaeffer v. Berry Case by the Supreme Court, and the probability of this theory was distinctly recognized by this court in the Dunn v. Land Case, notwithstanding the holding that the whole question was one for the jury.

[2] Second. Upon applications made in 1804 the King of Spain granted to Vicente Lopez de Herrera and his three sons, Jose Vicente, Joaquin, and Mariano, and his mayordomo, Gregorio Farias, 5 sitios of land, situated west of the grant here involved, as shown on the Dix map. These grants were surveyed by Medrano, a Spanish surveyor. The grant of Gregorio Farias was the easternmost of the 5, and its east boundary line was well defined and marked by monuments which have survived the passage of time and the ravages of the elements, and are still easily located. There is testimony which may be said to support the conclusion that these grants have become known, at least by some of the residents of that section, as the "Barranco Blanco" lands or grant. The only explanation of this designation is found in the fact that on the Nueces river, on the north of these grants, but west of the Gregorio Farias, there are certain white bluffs, which in Spanish means "barranco blanco." A ranch near there is known by the same name. At what period the Herrera-Farias grants took on this application does not seem to be known. The record indicates that it is of comparatively recent origin. No other grant in that vicinity has ever borne that name. There is nothing in the record justifying an inference that the Gregorio Farias or Herrera grants were known as the "Barranco Blanco" lands at the time of the Rincon del Oso grant, or that the Governor of Tamaulipas or its surveyor general, Canales, had in mind the Herrera-Farias grants when they referred to the "Barranco Blanco" lands. This bit of history becomes important in view of appellee's contention, based on the Blucher survey (which was made for the assignee of Villareal, the original grantee of the Rincon del Oso), that the references in the field notes to the "Barranco Blanco pasture lands" as being the western boundary of the Rincon del Oso grant meant, as a matter of fact, that the Gregorio Farias grant constituted such western boundary—that the "Barranco Blanco pasture lands" and the Herrera-Farias grants were, at the time of the Rincon del Oso grant, identical. As this contention is the pivot of appellee's claim, it is entitled to minute consideration. As has been shown, there was not at the time of the Canales survey, had never been, nor is there now, any grant bearing the name Barranco Blanco. The white bluffs, "barranco blanco," presumably existed then, as now, on the Nueces. It may be that the country around and about them was locally known as the "Barranco Blanco pasture lands," and that local occurrences and objects were located with reference to the white bluffs, which served as a sort of landmark for every historical event, or passing episode in that vicinity. But these marks of deference alone could not serve here for any purpose. Canales, about the time of the survey here involved, also surveyed the Corpus Christi grant, lying south of and just across the Cayo del Oso from the Rincon del Oso grant, and by a strange coincidence described it (as here) as being bounded on the west by the Barranco Blanco lands. And yet it is conceded that the Gregorio Farias grant (which appellee contends comprised the Barranco Blanco lands referred to in the Canales surveys) does not touch the Corpus Christi on the west, or elsewhere; the southeast corner of the Farias grant is located several miles due west of the Corpus Christi northwest corner. Thus, in the Corpus Christi,

we have an ocular, physical demonstration of the fallacy of appellee's contention that, by his references to the Barranco Blanco, Canales meant the Gregorio Farias grant.

But that is not all. The Farias grant and survey were made 25 years before the Rincon del Oso. Its east line was clearly defined and well marked by enduring monuments. It will be assumed as a matter of course that Canales, the surveyor general of the state in which the grants were situated, was acquainted with the Farias grant, its records, its boundaries, and the marks thereof, and had them in mind when he surveyed out the Rincon del Oso. If he had intended to stretch the Rincon del Oso from a 10-league grant to a 26-league grant in order to tie it on to the Gregorio Farias, as appellee contends, it is inconceivable that he would not have specifically named the latter grant as the western boundary of the former, and clinched it by specific reference to the clearly defined and enduring monuments on that line. Surely he would have done one or the other, if such had been his intention. But he did neither. Instead he named the "Barranco Blanco pasture lands," a name unknown to the records of that district, and which has never been the subject of a title therein. If the Gregorio-Farias grant had been designated in the records at that time as the Barranco Blanco, or if the record here showed that the Farias was at that time generally known as the Barranco Blanco, it is possible that a different question would be presented. But this is not the case made, in either alternative, and, so far as the record shows, the "Barranco Blanco pasture lands" was an hallucination in the mind of Canales; or, to say the most of it, it was a territory so vague in extent and location as to afford no basis for a call that would outrank specific calls for natural objects, distances, and quantity, and thus enable the original grantee to enlarge his grant from one of 10 leagues to one of 26 leagues.

[3] Third. It will be observed that the call for the southwest corner of the grant is stated as "the corner on the prairie," but no guide is afforded for the exact, or even approximate, location of this corner, either by reference to a mark, or to an existing corner or line. It may have meant a point on the ground adjacent to the Oso; it may have meant that, as this corner was located far up on the Oso, where it had receded into a mere depression in the prairie, it should be designated as being "on the prairie," rather than on the running stream. But these are mere conjectures, which can give but little, if anything, to the value of this call. Of equal uncertainty is the call which locates the northwest corner at "the Refugio," on the Nueces river. No explanation was made of what was meant by "the Refugio"; no mark or existing corner or line is called for by which to locate or identify it; and no such place or point can be found in that

vicinity, or even in the vicinity of the northeast corner of the Gregorio Farias, to which appellee seeks to extend the northwest corner of this grant, because of the call for the "Barranco Blanco pasture lands" on the west. For these reasons, and because the call for the Barranco Blanco lands on the west is of no value, there is nothing in the grant, map, or field notes by which the northwest and southwest corners, or the west line, may be located, except by a resort to the obvious purpose to place the southwest corner on the Oso, and to the calls for distances and quantity.

[4] Fourth. Much stress is laid by appellee upon the fact that the Oso, from its mouth to a point some distance inland, is designated as the "Cayo del Oso," and from there to its source as the "Oso creek," and that even the west line contended for by appellant intercepts the creek rather than the Cayo. We do not regard this fact as material or significant. It seems that salt water comes into the Oso from the sea, and that the stream is known as the Cayo del Oso as far inland as this salt water influence is felt; when it becomes the Oso creek. It is not in the least probable, and there is no evidence to support the theory, that as early as 1831 this distinction had developed, or had occurred to the Mexican authorities, or that they contemplated that the stream would in the future acquire an additional or extended designation, just as the Laguna Madre, as then known, has since become known in part as the Nueces Bay, in part as the Corpus Christi Bay, while only the remaining part retains the original designation of Laguna Madre.

[5, 6] Summarized in general terms, then, the record shows conclusively, in our opinion, that the grant is "contracted," or, in other words, restricted and bound, by the Nueces river, the Laguna Madre (which embraces what are now known as Corpus Christi Bay and Nueces Bay) and the Cayo del Oso, on "all sides except the west"—that is, on the north, east, and south sides. Those waters, in other words, form a natural pocket, into which the grant was poured. The opening to this pocket forms the western boundary of the grant. The ends of this west boundary line are clearly shown to rest, one on the Cayo del Oso, and the other on the Nueces river, but the points of intersection are not marked by natural or artificial objects or by calls for established and existing older surveys. In such case distances, if called for, control. As the map shows the west line to begin on the Cayo del Oso at a distance of 400 cordeles from the southeast corner of the grant, which should be easily ascertained, that call for distance should prevail, thus establishing the southwest corner on the Cayo del Oso. With this corner thus established, a line running north to the Nueces river establishes the northwest corner on that stream, and the call in the field notes for a

west line of 350 cordeles in length is approximately satisfied, and thus the delineation on the Canales map, and the field notes of the original survey, are reasonably co-ordinated. It is true that by this process an excess of more than two leagues is embraced in the grant; but we understand the rule to be that a call for distance will prevail over a call for quantity, unless an unconscionable result is produced.

[7] We have endeavored to give the most painstaking consideration to every phase of the record. The conclusion we have reached is based upon our construction of the grant as written, in connection with the undisputed facts upon material issues as to the true location of the natural objects called for in the grant, maps and field notes. This construction having been accomplished, we find nothing left in the case to be determined by a jury in aid thereof, or that could alter it. No good purpose, then, can be served by remanding the cause, and it becomes our duty to here render judgment conformable to this opinion. While it is not intended by this decision to determine definitely the location of the west boundary line of the Rincon del Oso grant—such determination being unnecessary—we do hold that that line must lie to the east of the tract sued for, thus excluding that tract from the grant.

We think the judgment of the court below should be reversed, and that judgment should be here rendered for appellant for the land involved, and for costs. It is so ordered.

Reversed and rendered.